UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-12171-RGS

SV ATHENA, LLC

v.

B&G MANAGEMENT SERVICES, LLC;
B&G GLOBAL LIMITED d/b/a B&G MARINE SERVICES, LLC;
AND CHRISTOPHER TODD PATTERSON

MEMORANDUM & ORDER
ON DEFENDANTS' MOTIONS TO DISMISS

April 28, 2023

STEARNS, D.J.

SV Athena, LLC (SV Athena) brought this action against B&G Management Services, LLC (B&G Management); B&G Global Limited, doing business as B&G Marine Services, LLC (B&G Global or B&G Marine); and Christopher Patterson (collectively, defendants). SV Athena seeks damages for defendants' alleged breach of a maritime contract, breach of warranty of workmanlike repair/performance, negligence, and conversion. B&G Global and Patterson move to dismiss for lack of personal jurisdiction.

## BACKGROUND

SV Athena, a Georgia limited liability company, owns the S/V Athena (the Vessel), a 1988 Hinckley Sou'wester 59 sailboat. Jill K. Jinks, SV Athena's sole member, is a resident and domiciliary of Georgia. B&G Management is a Massachusetts limited liability company specializing in yacht management with its principal place of business in Harwich, Massachusetts. B&G Global is a company organized and registered in the British Virgin Islands, specializing in yacht management, maintenance, and refitting. B&G Global has service centers in Newport, Rhode Island and Lancaster, Virginia. The parties dispute where Patterson, the owner of B&G Management and minority owner of B&G Global, resides and is domiciled.

SV Athena alleges the following:[1] defendants provided yacht management services to SV Athena for the Vessel. In late November of 2019, Patterson or B&G Management delivered the Vessel from Southwest Harbor, Maine to B&G Global in the British Virgin Islands. After the Vessel was moved to the British Virgin Islands, Patterson told Jinks that the Vessel

---

[1] At the motion to dismiss stage, the court must accept all factual assertions made in a complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Because of the procedural posture of this case, the court will adopt SV Athena's factual allegations, although most if not all are disputed by defendants, as true.

needed to be repowered because its engine had been damaged. Patterson told Jinks that he had located an engine that he would install by the time Jinks next visited the British Virgin Islands on December 25, 2019. Patterson said that the engine would cost approximately $18,000 to purchase. SV Athena and defendants then entered into a contract where (1) Patterson and B&G Global agreed to obtain the engine, properly install it in the Vessel with any related exhaust or component systems, and ensure that the Vessel was seaworthy and in good working order; and (2) SV Athena would pay for the repairs. Jinks gave Patterson a check for $25,000 for the repairs.

When Jinks arrived in the British Virgin Islands on the date specified, the repairs and installation of the new engine had not been completed. Additionally, defendants were in the process of installing a much larger engine than the one Patterson had identified earlier, without having consulted SV Athena or Jinks first. Defendants sent SV Athena invoices for more than $125,000 in additional costs, including $29,981 to purchase the larger engine and around $80,000 of additional expenses to fit the larger engine into the Vessel and install related exhaust or component systems. SV Athena paid these funds to B&G Global, which would not release the Vessel without payment.

In June of 2020, B&G Management (or Patterson) delivered the Vessel from the British Virgin Islands to Southwest Harbor, Maine, and then in November of 2020, to Harwich Port, Massachusetts, and finally to Charleston, South Carolina.

When Jinks returned to the Vessel in Charleston in December of 2020, she discovered that the engine would not start and parts of the engine were corroded. When she finally managed to start the engine, it began spewing oil. After being contacted by Jinks, Patterson hired Safe Harbor City Boatyard (Safe Harbor) to inspect the Vessel. Safe Harbor removed over 4 gallons of emulsified water and oil from the engine. On January 7, 2021, a Safe Harbor manager told Jinks and Patterson that the "engine is much larger than the vessel requires" and that the exhaust system installed on the Vessel did not comply with the engine or muffler installation instructions, which caused the engine to fill with seawater. Compl. [Dkt # 1] ¶ 37.

SV Athena now seeks to recoup over $250,000 in damages under theories of breach of maritime contract, breach of warranty of workmanlike performance, maritime negligence, and conversion. Patterson and B&G Global move to dismiss the claims against them, claiming neither has sufficient contacts in the state for this court to have personal jurisdiction.

**DISCUSSION**

Personal jurisdiction, which relates to the power a court has over a defendant, may be general or specific. General jurisdiction, the broader of the two, is "the power of a forum-based court, whether state or federal, over a defendant 'which may be asserted in connection with suits not directly founded on [that defendant's] forum-based conduct . . . .'" *Pritzker v. Yari*, 42 F.3d 53, 59 (1st Cir. 1994), quoting *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 462-463 (1st Cir. 1990). By contrast, specific jurisdiction "is narrower in scope and may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" *Pritzker*, 42 F.3d at 60, quoting *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088–1089 (1st Cir. 1992). Plaintiff bears the burden of establishing personal jurisdiction. *Mass. Sch. of Law at Andover, Inc. v Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).

The court does not have personal jurisdiction in either of its forms over Patterson or B&G Global, for the reasons discussed below.

I.   **General Jurisdiction**

For a court to exercise general jurisdiction over a defendant, "(1) the defendant must have sufficient contacts with the forum state, (2) those contacts must be purposeful, and (3) the exercise of jurisdiction must be

reasonable under the circumstances." *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 32 (1st Cir. 2010). Sufficient contacts require that defendant engage in the "continuous and systematic" pursuit of general business activities in the forum state. *Id.*, citing *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 216 (1st Cir. 1984); 4A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.5 (3d ed. 2002) ("[T]he defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction."). For purposes of the general jurisdiction analysis, the court "consider[s] all of a defendant's contacts with the forum state prior to the filing of the lawsuit." *Harlow v. Children's Hosp.*, 432 F.3d 50, 65 (1st Cir. 2005).

### a. Christopher Patterson

Patterson argues that this court does not have general personal jurisdiction over him because he was a British Virgin Islands resident at the time of the relevant events in this matter and is now a Virginia resident. For its part, SV Athena argues for its part that Patterson had continuous and systematic ties to Massachusetts because he owned property, paid taxes, and held a driver's license in Massachusetts. Pl.'s Opp'n to Defs.' Mot. to Dismiss

(Pl.'s Opp'n) [Dkt # 27] at 10. Patterson also holds a Merchant Marine Captain's License, issued May of 2019, in which Massachusetts is listed as his present address. Ex. B [Dkt # 27-2].

"The standard for evaluating whether these contacts satisfy the constitutional general jurisdiction test 'is considerably more stringent' than that applied to specific jurisdiction questions." *Noonan v. Winston Co.*, 135 F.3d 85, 93 (1st Cir. 1998), quoting *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 216 (1st Cir. 1984). A defendant must be "essentially at home" in the state – in other words, his place of domicile. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021), quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Patterson was a part-time resident of Massachusetts from 2017-2018 and a full-time resident of Massachusetts from 2020 to mid-2021. Chris Patterson Aff. [Dkt # 16-1] ¶¶ 5-10. But SV Athena has not shown that Patterson was domiciled in Massachusetts during the relevant time period. *See id.* ¶¶ 8, 13-14 (stating that Patterson lived in the British Virgin Islands in 2019 and is currently a Virginia resident).

SV Athena also places emphasis on Patterson's ties with Massachusetts in his capacity as the owner and resident agent of Massachusetts-based B&G Management, citing his listing of a Massachusetts location as his address on

B&G Management's annual report forms.  *See, e.g.*, Pl.'s Opp'n at 11-13; Exhibit A [Dkt # 27-1].  The court finds this insufficient to establish grounds for asserting general personal jurisdiction over Patterson because the forms establish jurisdiction over B&G Management, but not over Patterson as an individual.  *See Escude Cruz v. Ortho Pharm.*, 619 F.2d 902, 906 (1st Cir. 1980) ("The general rule is that jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation.").

### b. B&G Global

SV Athena argues that because B&G Global is effectively an alter ego of Patterson, this court may assert general personal jurisdiction over B&G Global.  Because this court declines to exercise general personal jurisdiction over Patterson, as described above, this argument fails.

Separately, SV Athena argues that B&G Global has purposely availed itself to Massachusetts residents because its website advertises that it "provide[s] service between Rhode Island and Maine."  Pl.'s Opp'n at 4-5.  The mere existence of B&G Global's website, accessible to Massachusetts residents, is not enough – rather, "[s]omething more is necessary, such as interactive features which allow the successful online ordering of the defendant's product." *McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005).

8

In *Cossaboon*, the First Circuit found that although the website of Maine Medical Center (MMC) did have interactive features, such as allowing users to complete patient pre-registration and register for classes, it did not sell or render services online. 600 F.3d at 35. Additionally, the website had four stray references to New Hampshire, but its homepage did not mention New Hampshire at all. *Id.* at 36. Although available to New Hampshire residents, the First Circuit held that MMC's website was not purposefully directed toward them. *Id.*

B&G Global's website is analogous to MMC's website. B&G Global's website does not sell or render any services online. Instead, the website primarily provides information about its services, and provides a contact form at the bottom of the page for website visitors to request services. Pl.'s Opp'n at 4-5; *see also B+G Marine Services*, http://www.bgbvi.com/yacht-management (last visited Apr. 11, 2023). And while Massachusetts is "between Rhode Island and Maine," the site does not mention Massachusetts at all. Under the First Circuit's analysis in *Cossaboon*, B&G Global has not purposefully availed itself of the opportunity to do business in Massachusetts through its website.

## II.   Specific Jurisdiction

To establish specific jurisdiction, the plaintiff must show relatedness, purposeful availment, and reasonableness.  The court must consider:

> (1) whether the claim "directly arise[s] out of, or relate[s] to, the defendant's forum state activities;" (2) whether the defendant's in-state contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;" and (3) whether the exercise of jurisdiction is reasonable.

*C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014), quoting *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.* 290 F.3d 42, 60-61 (1st Cir. 2002).  Under the facts alleged in the Complaint, the court does not have specific jurisdiction over either Patterson or B&G Global because SV Athena's claims do not arise from either defendant's activities in Massachusetts.

Contract and tort claims are subject to differing analyses in the personal jurisdiction inquiry. "[I]f a contract claim, our stereotypical inquiry tends to ask whether the defendant's forum-based activities are 'instrumental in the formation of the contract,'; if a tort claim, we customarily look to whether the plaintiff has established 'cause in fact' . . . and legal cause." *Mass. Sch. of Law*, 142 F.3d at 35 (citations omitted).

Any activity of the defendants in Massachusetts was not instrumental in the formation of the contract with SV Athena. The parties' contract was formed in the British Virgin Islands and the improper installation and repair of the engine also is alleged to have taken place in the British Virgin Islands. Patterson and B&G Global's activity in Massachusetts – temporarily leaving the Vessel there before its final stopping point nearly a year after the alleged breach of contract took place – is hardly related to the parties' formation of the contract.

Similarly, the court cannot assert personal jurisdiction with respect to SV Athena's negligence claim because it has not established that Patterson and B&G Global's conduct in Massachusetts is the but-for cause of its injury or gave rise to its cause of action. Indeed, the defendants' Massachusetts conduct could be removed altogether from SV Athena's Complaint and its claims would remain virtually identical. SV Athena's Complaint asserts that the cause-in-fact and legal cause of SV Athena's injury and claim is defendants' conduct in the British Virgin Islands.[2]

---

[2] SV Athena argues that this court also has jurisdiction over B&G Global under Fed. R. Civ. P. 4(k)(2), which provides that a court may assert personal jurisdiction over a defendant if that defendant is beyond the reach of any state court of general jurisdiction. But that is not the case here. SV Athena notes B&G Global has service centers in Newport, Rhode Island and

### III.  SV Athena's Request for Jurisdictional Discovery

In the alternative, SV Athena requests jurisdictional discovery to develop additional facts. Jurisdictional discovery is permitted where a plaintiff has made a colorable claim of jurisdiction, which requires a plaintiff to "present facts to the court which show why jurisdiction would be found if discovery were permitted" and has been diligent in preserving their rights. *D.S. Brown Co. v. White-Schiavone, JV*, 537 F. Supp. 3d 36, 44 (D. Mass 2021), quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001). Even where these conditions are met, however, the court still has "broad discretion to decide whether discovery is required." *Swiss Am. Bank, Ltd.*, 274 F.3d at 626, quoting *Crocker v. Hilton Int'l Barb., Ltd.*, 976 F.2d 797, 801 (1st Cir. 1992).

The court is unconvinced that jurisdictional discovery is needed because the factual record is ambiguous as to whether personal jurisdiction exists over B&G Global and Patterson. *CDM Smith, Inc. v. Thevar*, 2022 WL 4629239, at *10 (D. Mass. Sept. 30. 2022). Quite the opposite. Even construed in the light most favorable to SV Athena, it is clear that it does not.

---

Lancaster, Virginia. Compl. ¶ 6. The maintenance of service centers in those states would likely be sufficient for general jurisdiction in those states.

## ORDER

For the foregoing reasons, B&G Global and Patterson's Motions to Dismiss are <u>ALLOWED</u>.  The Clerk will enter a pre-trial schedule for the remaining parties, SV Athena and B&G Management.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE